## General Sessions—New York County.

### *June,* 1886.

### PEOPLE *v.* LENHARDT.

#### CONSPIRACY — COERCION — PLEADING — JOINDER — INDICTMENT.

Under section 279, Code of Criminal Procedure, two distinct misdemeanors, *e. g.,* conspiracy (*Penal Code,* § 168, subd. 5) and coercion (§ 653, subd.

3), may be set up in different counts of the same indictment, where the acts complained of in each case are the same, and constitute the different crimes.

*It seems,* that where the acts complained of constitute a felony and also a misdemeanor, both may be joined in one indictment, provided they are charged in separate counts.

Where the gist of the acts complained of in two counts of an indictment is the same, *e. g.,* a conspiracy or coercion, it is proper to charge in the separate counts the doing of the prohibited acts with different intents and as against different parties, provided the alleged criminal acts constitute one and the same transaction.

The above principles applied to the indictment in this case, charging, *first,* a conspiracy directed against a certain firm (*Penal Code,* § 168, subd. 5); *second,* a conspiracy directed against the employees of said firm (*Id.*); *third,* coercion of said firm (§ 653, subd. 3); *fourth,* coercion of said employees (*Id.*), and the said indictment held good.

What is sufficient to constitute an allegation of conspiracy under section 168, subdivision 5, Penal Code, and to constitute an allegation of coercion under section 653, subdivision 3, Penal Code, considered by the court.

The indictment in this case held good under sections 275 and 276, Code of Criminal Procedure.

DEMURRER to indictment.

The defendant, George Lenhardt, together with forty-six others, was indicted April 26, 1886, in the Court of General Sessions of New York, of the crimes of conspiracy (*Penal Code,* § 168, subd. 5) and coercion (§ 653, subd. 3). Thereafter certain of the defendants demurred to the indictment on the grounds set out in the opinion.

The indictment contained four counts. The *first count* was as follows:

" The said defendants all late of, etc., being persons of evil minds and dispositions, together with divers other evil disposed persons whose names are to the grand jury aforesaid as yet unknown, unlawfully, wickedly and maliciously contriving, devising and intending, by force, threats and intimidation to prevent and hinder J. L. C., H. L. S. and W. A. S. (Cavanagh, Sanford & Co.), copartners in trade, then and there using and exercising the lawful trade and calling of tailors, which they then and there carried on in a certain house and shop, there situate, from using and exercising their said lawful trade and calling, on, &c., at, &c., unlawfully, wickedly and maliciously

did conspire, combine, confederate and agree together, between and amongst themselves, by force, threats and intimidation, to prevent and hinder them the said C., S. & Co. from using and exercising their said lawful trade and calling.

"And the said defendants, together with the said other evil disposed persons, in pursuance and furtherance of, and according to the said conspiracy, combination, confederacy and agreement between and amongst themselves as aforesaid, afterwards, to wit: on, &c., at, &c., did unlawfully, wickedly and maliciously, by divers threats, threatening notices, exhortations, persuasions, falsehoods, stratagems and devices, attempt and endeavor to intimidate (naming certain of the male employees of C., S. & Co.), being then and there servants, employees and workmen, employed and hired by them the said C., S. & Co., in the conduct and exercise of their said lawful trade and calling, and also (naming certain of the female employees) being then and there servants, employees and workwomen, employed and hired, etc., and to coerce, induce and constrain them the said servants, employees, workmen and workwomen, against their own free will and good judgment, to quit their said employment, and to refuse to do and perform the work, labor and duties thereof.

"And the said defendants, together with the said other evil disposed persons, in the further pursuance, &c., afterwards, to wit: on, &c., at, &c., did unlawfully, wickedly and maliciously assault, beat and wound divers of the said servants, employees and workmen, so employed and hired by the said C., S. & Co. as aforesaid, to wit: (naming them) with intent in so doing to intimidate the said last-named employees, and to coerce and constrain them, against their own free will, to quit their said employment, and to refuse and cease to do and perform the work, labor and duties thereof.

"And the said defendants, together with the said other evil disposed persons, in the further pursuance, &c., afterwards, to wit: on, &c., at, &c., did unlawfully, wickedly and maliciously, by divers threats, threatening notices, exhortations, persuasions, falsehoods, stratagems and devices, attempt and endeavor to intimidate the said C., S. & Co., and to coerce, constrain and compel them, against their own free will, to dismiss and cease to

employ the said servants, employees, workmen and workwomen so as aforesaid, by them the said C., S. & Co., then and there employed and hired in the conduct and exercise of their said lawful trade and calling.

"And the said defendants, together with the said other evil disposed persons, in the further pursuance, &c., afterwards, to wit: on, &c., at, &c., did unlawfully, wickedly and maliciously, by watching and besetting the said house and shop where they, the said C., S. & Co., so carried on their said lawful trade and calling, by force, intimidation and threats, by divers threaten·ing notices, hand-bills and printed circulars, and also by disorderly, boisterous and tumultuous conduct and actions, breaches of the peace, and by divers stratagems and devices, attempt and endeavor to intimidate divers persons whose names are, to the grand jury aforesaid, unknown, who then desired to trade with the said C., S. & Co. at the said house and shop, and to prevent and hinder the said last mentioned persons from so trading with the said C., S. & Co.

"And the said defendants, together with the said other evil disposed persons, in the further pursuance, &c., afterwards, to wit: on, &c., at, &c., unlawfully, wickedly and maliciously, by divers threatening notices, placards, hand-bills and printed circulars, and by so attempting and endeavoring to intimidate the said servants, employees, workmen and workwomen of them, the said C., S. & Co., and to coerce and induce and constrain them, the said servants, employees, workmen and workwomen, against their own free will and good judgment, to quit their said employment, and to refuse to do and perform the work, labor and duties thereof, by so assaulting, beating and wounding the said above-named servants, employees and workmen in manner aforesaid, by so attempting and endeavoring to intimi· date the said C., S. & Co., and to coerce, constrain and compel them, against their own free will, to dismiss and cease to employ their said servants, employees, workmen and workwomen, by so attempting and endeavoring to intimidate the said persons so desiring to trade with the said C., S. & Co. at the said house and shop, and to prevent and hinder such persons from so trad-ing, and also by divers other unlawful, subtle and indirect

means, strategems and devices, did greatly harrass, impede, embarrass and obstruct the said C., S. & Co., in the use and exercise of their said lawful trade and calling, to wit: for the better carrying on the said conspiracy, combination, contederacy and agreement into effect and execution, to the great damage, oppression and grievance of the said C., S. & Co., to the pernicious example, &c., against, &c."

*Second count :*

"And the grand jury aforesaid, &c. Heretofore to wit: on, &c., the said J. L. C., H. L. S., and W. A. S., (Cavanagh, Sanford & Co.) being copartners in the trade as aforesaid, were merchant tailors, lawfully carrying on, using and exercising trade and business as such at their said house and shop, situate in the said city and county, hiring and employing a large number of journeymen workmen and workwomen in their said trade and business, and amongst others the journeymen, workmen and workwomen hereinafter mentioned; and on the day and in the year aforesaid, the said male employees were journeymen and workmen in the lawful trade and calling of tailors, and the said female employees were workwomen in the lawful trade and calling of tailoresses; and on the said day, &c., the said journeymen, workmen and workwomen, were lawfully exercising and using their said respective lawful trades and callings, and were hired and employed by, and in the hire and employ of the said C., S. & Co., as aforesaid, then and there doing and performing divers labors, work and duties of their said trades and callings for and on behalf of the said C., S. & Co., their masters.

"And the said defendants, all late of, &c., being persons of evil minds and dispositions, together with the said divers other evil disposed persons, &c., well knowing the premises in this count already alleged, but unlawfully, wickedly and maliciously contriving, &c., afterwards, to wit: on, &c., at, &c., unlawfully, wickedly and maliciously did conspire, combine, confederate and agree together, between and amongst themselves, by force, threats and intimidation, to prevent and hinder them, the said journeymen workmen and workwomen, from using and exercising their said lawful trades and callings."

VOL. IV.—41.

(The overt acts were substantially the same as those alleged. in the first count.)

*Third count :*

"And the grand jury aforesaid, by this indictment, further accuse the defendants of the crime of coercion, committed as follows :

" The said defendants, all late of, &c., afterwards, to wit: on, &c., at, &c., with a view to compel the said C., S. & Co. to abstain from using and exercising their said lawful trade and calling as tailors, which they then and there, as in the first count of this indictment alleged, used and exercised, and which said lawful trade and calling they the said C., S. & Co., then and there had a legal right to use and exercise, or to abstain from using and exercising, at their own free will and pleasure, without any hindrance or molestation whatsoever, with force and arms, did unlawfully and wrongfully attempt the intimidation of them the said C., S. & Co., by threats, against, &c."

*Fourth count :*

"And the grand jury aforesaid, by this indictment, further accuse the said defendants of the crime of coercion, committed as follows :

" The said defendants, all late of, &c., afterwards, to wit: on, &c., at &c., with a view to compel the said male employees, being such journeymen and workmen in the lawful trade and calling of tailors as aforesaid, and also the said female employees, being such workwomen in the lawful trade and calling of tailoresses as aforesaid, and each of them, the said journeymen, workmen and workwomen, to abstain from using and exercising their said respective lawful trades and callings, which they then and there, as in the second count of this indictment alleged, used and exercised, and which said lawful trades and callings they, the said journeymen, workmen and workwomen then and there had a legal right to use and exercise, or to abstain from using and exercising, at their own free will and pleasure, without any hindrance or molestation whatsoever, with force and arms, did unlawfully and wrongfully use violence and inflict injury upon certain of them, the said journeymen and workmen, to wit: the said H. K., &c., and threaten

such violence and injury to all of them, the said journeymen, workmen and workwomen, and did then and there unlawfully and wrongfully use and attempt the intimidation of the said journeymen, workmen and workwomen by threats and force, against, &c."

*Randolph B. Martine*, district attorney, for the people.

*Charles Steckler*, attorney, and *Roger A. Prior*, of counsel, for defendants.—I. The first and second counts are misjoined. A conspiracy against Cavanagh, Sanford & Co. is not the same crime as a conspiracy against others, their workmen. Nor can the overt acts in execution of these several conspiracies be identical. The force, threats and intimidation essential to constitute the crime of conspiracy under section 171 Penal Code, must be force, threats and intimidation applied to the person whom it is conspired to prevent from using or exercising his trade or calling. *Penal Code*, §§ 168, 653. But force, threats and intimidation of Cavanagh, Sanford & Co. are not force, threats or intimidation of others, their employees. But, even were the overt acts alleged in the indictment the same, still the "acts complained of" are not the same; for the acts complained of are not merely acts in execution of the conspiracy but the conspiracy itself as well. The acts without the conspiracy would not be a crime under section 168 of the Penal Code. The conspiracy then, being an essential element, of the act complained of, and the conspiracies charged in the first and second counts being different, it results necessarily that the acts complained of are not identical. The difference in the conspiracies destroys the identity of the criminal acts.

II. The third and fourth counts are misjoined. The acts "complained of," viz. : force, threats and intimidation, are different; for, the terms of the statute demonstrate that the force, threats and intimidations must be applied to the person attempted to be coerced; the force, threats and intimidation of Cavanagh, Sanford & Co. are not identical with force, threats and intimidation directed against others their employees.

III. The first and second counts are misjoined with the third

and fourth. The first and second counts charge the crime of conspiracy; the third and fourth the crime of coercion. But these two crimes are constituted of different elements, the one the act *plus* the conspiracy, the other of the act only. Dawson *v.* The People, 25 *N. Y.* 399. Under section 653 a conviction may be had without proof of a conspiracy; under section 168 without the conspiracy there is no crime. The "acts complained of" in the third and fourth counts would not warrant a conviction under the first and second counts. Hence, the acts alleged in these counts constitute but one crime, and not different crimes, as required by section 179 Code Criminal Procedure.

SMYTH, Recorder.—The first and second counts of the indictment charge the defendants with the crime of "conspiracy," and the third and fourth counts with the crime of "coercion."

A general demurrer to the indictment has been interposed by Rasherter and certain others of the defendants, in which they assign as cause of demurrer:

*First.* That the indictment does not conform to the requirements of sections 275 and 276 of the Code of Criminal Procedure: and

*Second.* That more than one crime is charged within the meaning of sections 279 and 284 of said Code.

In respect to the first ground of demurrer, it is sufficient to say that, upon an inspection of the indictment, it clearly appears that the requirements of both sections of the Code have substantially been complied with. The title of the action, the name of the court to which the indictment was presented, the names of the parties are stated, and the facts constituting the crimes or causes of action are plainly and concisely set forth, and it is signed by the district attorney. But even if some of the statutory requirements were omitted, yet if it appeared that it was found in the proper court and action, and that no prejudice to the defendants could ensue by reason of the omissions, the court is bound, under section 284 of the Code of Criminal Procedure, to disregard such omissions. People *v.* Peck, 2 *N. Y. Crim. Rep.* 314, affirmed by Court of Appeals, 96 *N. Y.* 650.

The second objection presented by the demurrer is the objec-

tion principally relied upon by the learned counsel for the defendants, as being fatal to the indictment.

The indictment contains four counts. The two first charge the defendants with the crime of "conspiracy," and the remaining two counts each charge them with the crime of "coercion." The first of the counts charging conspiracy alleges that the defendants, contriving and intending, by force, threats and intimidation, to prevent and hinder Cavanagh, Sanford & Co., a firm engaged in carrying on and conducting in this city the trade and business of tailors, from using and exercising their lawful trade and calling, unlawfully combined, conspired, confederated and agreed together between and amongst themselves, by force, threats and intimidation, to prevent and hinder Cavanagh, Sanford & Co. from using and exercising their aforesaid lawful trade and calling.

The second count, after averring the employment by Cavanagh, Sanford & Co. of certain journeymen and workmen in their said trade and calling, who are specifically named, charges the defendants with conspiring, &c., by force to prevent and hinder the said journeymen and workmen from using and exercising their said lawful trades and callings.

In both counts certain overt acts are pleaded, which are substantially the same, alleging that said acts were committed by the defendants in furtherance of the conspiracy charged in each of said counts.

These overt acts consist generally of assaults, threatening notices, exhortations, persuasions, stratagems and devices, attempts and endeavors to intimidate the workmen, servants and employees of Cavanagh, Sanford & Co., for the purpose of coercing them against their free will to quit their said employment and to refuse to work for the said Cavanagh, Sanford & Co., and also by threats and intimidation endeavoring to coerce Cavanagh, Sanford & Co. to dismiss and cease to employ their workmen, and attempting by threats, &c., to prevent persons from trading with them.

The third count charges the defendants with the crime of "coercion," in having attempted the intimidation of Cavanagh, Sanford & Co. by threats, with a view, in so doing, to compel

them to abstain from carrying on their said trade and business; and the fourth count charges them with "coercion," in having attempted the intimidation of the employees of Cavanagh, Sanford & Co., and also with having committed violence and inflicting injuries upon them, with a view to compel said employees to abstain from carrying on their business.

The first two counts for "conspiracy" are framed under subdivision 5 of section 168 of the Penal Code, which provides as follows: "If two or more persons conspire either . . . . to prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering, or threatening to interfere, with tools, implements or property belonging to or used by another, or with the use or employment thereof . . . . each of them·is guilty of a misdemeanor."

The two last counts are framed under subdivisions 1 and 3 of section 653 of said Code, which provides as follows: "A person who, with a view to compel another person to do, or abstain from doing, an act, which such other person has a legal right to do, or abstain from doing, wrongfully and unlawfully,

"1. Uses violence or inflicts injury upon such other person or his family, or a member thereof, or upon his property, or threatens such violence or injury; or, . . . .

"3. Uses or attempts the intimidation of such person by threats or force; is guilty of a misdemeanor."

It, therefore, clearly appears upon the face of the indictment that two separate and distinct crimes are charged therein.

By section 278 of the Code of Criminal Procedure, it is provided that "the indictment must charge but *one crime* and in one form, except as in the next section (§ 279) provided." That section provides that "the crime may be charged in separate counts to have been committed in different manner or by different means; and where the *acts complained of* may constitute different *crimes* such crimes may be charged in separate counts.

A crime is defined to be an act or omission forbidden by law, and punishable, upon conviction, in the manner prescribed by the statute; and a crime is declared to be either a *felony* or a *misdemeanor. Penal Code*, §§ 3, 4.

It seems, therefore, that "if the acts complained of " in a criminal prosecution constitute a felony and also a misdemeanor, both the felony and the misdemeanor may be joined in the same indictment, provided that they are charged in separate counts. *Code Crim. Pro.* § 279.

Prior to the Code of Criminal Procedure, it was well settled that separate and distinct misdemeanors might be joined in the same indictment. Polinsky *v.* People, 73 *N. Y.* 65, and cases cited; Hawker *v.* People, 75 *Id.* 487. It was held that separate and distinct felonies, involving different punishments, might be joined, so long as all the counts related to the same transaction; and that a count for burglary, with intent to commit larceny might properly be united with a count for larceny. Burglary and larceny, rape and assault with intent to commit rape, larceny and receiving stolen goods, assault with intent to kill and simple assault.

There can be no doubt, under the provisions of the Code of Criminal Procedure, and the decisions prior and subsequent to its adoption, of the right to join in the same indictment separate and distinct crimes, provided they are charged in separate counts, where the acts complained of may constitute different crimes; and it is also well settled that the alleged crime may be charged in separate counts to have been committed by different means. People *v.* Menken, 3 *N. Y. Crim.* 233, and cases cited.

It is claimed, by the learned counsel for the defendants, that the crime charged in the first count, viz. : a conspiracy against Cavanagh, Sanford & Co. is not the same crime as the conspiracy charged in the second count, because he claims that the conspiracy therein alleged is one against the workmen of Cavanagh, Sanford & Co. Conceding this to be as it is claimed, it does not follow that there is an improper joinder of these counts. The gist of the "acts complained of," in both the first and second counts, is the *conspiracy*, and it has been repeatedly determined that it is proper to charge, in separate counts, the doing of the prohibited acts with different intents and as against different parties, provided the alleged criminal acts constitute one and the same transaction; and in this case the people allege the commission by the defendants of a number of illegal acts from

which a conspiracy may be inferred, and whether these acts were directed against Cavanagh, Sanford & Co., or against their journeymen and employees, is a matter to be determined upon the evidence which may be given upon the trial.

The practice of joining counts charging, as these do, a conspiracy against different persons, seems to be well settled. Thus, in Reg. *v.* Hibbert (13 *Cox's Crim. Cas.* 82), which was an indictment for conspiracy to molest and obstruct workmen, with a view to coerce them to quit their employment, and to molest and obstruct employers, with a view to coerce them to alter their mode of business, the indictment contained numerous counts, some charging the defendants with conspiring against the prosecutors who were master cabinet-makers, with a view to coerce them to dismiss and cease to employ divers workmen, and in other counts charging a conspiracy with a view to coerce their workmen to quit their employment.   See, also, Regina *v.* Bauld, 13 *Cox's Crim. Cas.* 282; Regina *v.* Bunn, 12 *Id.* 316; Taylor *v.* People, 12 *Hun*, 213.

The remaining question arising on this demurrer, it seems to me, is this: Do the "acts complained of," constitute the crimes of conspiracy and coercion charged in the indictment; and from an examination of the overt acts charged in the first two counts, I am of opinion that these acts, if established by the evidence to be given on the trial, are amply sufficient to sustain a conviction under the counts charging conspiracy and those charging coercion.

It follows, that judgment must be given upon the demurrer disallowing it. and that an order to that effect be entered upon the minutes.